

FILED

OCT 05 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

1   SERGENIAN ASHBY LLP
2   Joseph R. Ashby (SBN 248579)
    joseph@sergenianashby.com
3   1055 West Seventh Street, 33rd Floor
4   Los Angeles, CA 90017
    Telephone:  (323) 318-7771
5
    Attorneys for Applicant Olegs Fils
6
                    UNITED STATES DISTRICT COURT
7
                  NORTHERN DISTRICT OF CALIFORNIA
8
                          SAN JOSE DIVISION
9

10  IN RE APPLICATION OF          MISC. CASE NO.              NC
    OLEGS FILS,
11                                CV·20  80176MISC
12              Applicant,
                                  EX PARTE APPLICATION FOR
13  For Order Authorizing Discovery For   THE ISSUANCE OF SUBPOENAS
    Use In Foreign Proceedings Under 28   DUCES TECUM PURSUANT TO
14  U.S.C. § 1782                 28 U.S.C. § 1782 TO SPECIALIZED
15                                HELICOPTERS, INC., HYATT
                                  CORPORATION, HYATT
16                                CARMEL HIGHLANDS ALSO
17                                KNOWN AS HIGHLANDS INN,
                                  INC., BURST + BLOOM,
18                                SOMMPICKS LLC, BENCHMARK
19                                WINE GROUP, INC., AND
                                  BELMONT WINE EXCHANGE,
20                                LLC
21
                                  [Filed Concurrently with Declaration of
22                                Oleg Fils, Declaration of Agris Bitans,
23                                Declaration of Joseph R. Ashby, and
                                  [Proposed] Order]
24

25

26

27

28

EX PARTE APPLICATION FOR THE ISSUANCE OF SUBPOENAS

# TABLE OF CONTENTS

Page

JURISDICTION AND VENUE...........................................................................1

PRELIMINARY STATEMENT........................................................................ 2

STATEMENT OF FACTS ............................................................................... 5

ARGUMENT.....................................................................................................10

    I.     Mr. Fils's Application Easily Meets the Threshold Requirements of
         Section 1782 .............................................................................. 12

    II.    The Discretionary *Intel* Factors Weigh in Favor of Permitting Mr.
         Fils's Application.......................................................................... 14

CONCLUSION.................................................................................................18

EX PARTE APPLICATION FOR THE ISSUANCE OF SUBPOENAS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5 *Advanced Micro Devices, Inc. v. Intel Corp.*,
   292 F.3d 664 (9th Cir. 2002), aff'd, 542 U.S. 241 (2004) ............................................14

6 *Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
7   793 F.3d 1108 (9th Cir. 2015)..................................................................................13, 14

8 *In re: Application of Joint Stock Co. Raiffeinsenbank*,
   No. 16-MC-80203, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) .............................16
9

10 *Burnham v. Superior Court of California, Cty. of Marin*,
   495 U.S. 604 (1990) ..................................................................................................13

11 *In re Edelman*,
12   295 F.3d 171 (2d Cir. 2002) ....................................................................................13

13 *In re: Ex Parte Application Varian Med. Sys. Intl. AG*,
   16-MC-80048-MEJ, 2016 WL 1161568,
14   (N.D. Cal. Mar. 24, 2016)............................................................................................11

15 *In re Gianasso*,
   No. C 12-80029, 2012 WL 651647 (N.D. Cal. Feb. 28, 2012)....................................10
16

17 *In re Google Inc.*,
   No. 14-MC-80333, 2014 WL 7146994 (N.D. Cal. Dec. 15, 2014) ..............................2

18
19 *In re Illumina Cambridge Ltd.*,
   No. 19MC80215, 2019 WL 5811467 (N.D. Cal. Nov. 7, 2019).............................12, 13

20 *Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ..................................................2, 4, 10, 11, 13, 14, 15, 16, 17
21

22 *In re Letter Rogatory-Request for Int'l Judicial Assistance From the Harju Country
   Court in Estonia Petition of Lyoness Eesi OÜ*,
23   No. 17-MC-80044, 2017 WL 1436096 (N.D. Cal. Apr. 24, 2017).............................15

24 *In re Palantir Techs., Inc.*,
   No. 20-15073, 2020 WL 3988000 (9th Cir. June 22, 2020) .....................................11
25

26 *Palantir Techs., Inc. v. Abramowitz*,
   415 F. Supp. 3d 907 (N.D. Cal. 2019) ....................................................................10

27

28

-iii-

EX PARTE APPLICATION FOR THE ISSUANCE OF SUBPOENAS

*In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to Take*
  *Discovery in a Foreign Proceeding,*
  No. MC 18-0037, 2018 WL 2146412 (C.D. Cal. May 9, 2018) ....................................................7

*In re Republic of Ecuador,*
  No. C-10-80225, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) .................................................1

*In re Super Vitaminas, S.A.*
  2017 WL 5571037 (N.D. Cal. Nov. 20, 2017)...........................................................................12

### STATUTES

28 U.S.C. § 1782 ........................................................................................................... *passim*

Latvian Civil Procedure Law Articles 137(1) .................................................................................6

Latvian Civil Procedure Law Articles 140(1) .................................................................................6

EX PARTE APPLICATION FOR THE ISSUANCE OF SUBPOENAS

## MEMORANDUM OF POINTS AND AUTHORITIES

Applicant Olegs Fils, by his counsel, hereby submits this memorandum of law in support of *ex parte* application for the issuance of subpoenas duces tecum pursuant to 28 U.S.C. § 1782 to Specialized Helicopters, Inc., the Hyatt Corporation, the Hyatt Carmel Highlands also known as Highlands Inn, Inc., Burst + Bloom, SommPicks, LLC, Benchmark Wine Group, Inc., and Belmont Wine Exchange, LLC (the "Application"), for the purpose of obtaining discovery from Specialized Helicopters, Inc., the Hyatt Corporation, the Hyatt Carmel Highlands/Highlands Inn Inc., Burst + Bloom, SommPicks, LLC, Benchmark Wine Group, Inc., and Belmont Wine Exchange, LLC (collectively the "Merchants") in connection with proceedings currently before a court in Latvia (Case No.C30657918) (the "Latvian Proceedings").[1] Mr. Fils's proposed Rule 45 subpoenas (the "Subpoenas") to Specialized Helicopters, Hyatt, the Hyatt Carmel Highlands/Highlands Inn, Inc., Burst + Bloom, SommPicks, Benchmark Wine Group, and Belmont Wine Exchange are attached to the concurrently filed declaration of Joseph R. Ashby as Exhibits 11 through 17, respectively.

## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1782 as this Application is for discovery involving persons that are found and documents located within the Northern District of California, and the discovery is relevant and important to assist applicant in his foreign court proceedings. Venue in the Northern District of California is appropriate pursuant to 28 U.S.C. § 1782 because the discovery is being sought from corporations and persons residing or found in this judicial district. This matter is properly assigned to the San Jose Division because a substantial part of the events to

---

[1] Mr. Fils requests this Order *ex parte,* as is routine in Section 1782 applications. *In re Republic of Ecuador,* No. C-10-80225, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010) ("[I]t is common for 'the process of presenting the request to a court and to obtain the order authorizing discovery' to be conducted ex parte."). As such, it is widely recognized that Section 1782 applications are properly handled *ex parte,* and the fact that Mr. Fils brings a Section 1782 application is "typically justified" and "no substantial rights of the subpoenaed person are implicated by such action." *See id.*

EX PARTE APPLICATION FOR SUBPOENAS

1   which the Subpoenas related are believed to have occurred in the County of Monterey. L.R. 3–1(c),

2   (e).

3

## PRELIMINARY STATEMENT

The purpose of 28 U.S.C. § 1782 is to assist foreign courts and litigants in situations exactly like this one. The documents requested by the Subpoenas are critical to the Latvian Proceedings, yet will be difficult if not impossible for the Latvian court to reach. Consistent with the liberal discovery provided under the Federal Rules, the standard to issue a subpoena under § 1782 is low, especially when the recipient of the subpoena is not a party to the foreign proceeding.

Section 1782 authorizes a federal district court to order discovery of documents and testimony for use in a foreign proceeding from any person who resides or is found in the court's district:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made … upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. 28 U.S.C. § 1782(a).

A successful application must meet three requirements: (1) the person(s) from whom discovery is sought must reside or be "found" in the district of the court issuing the discovery order; (2) the discovery must be "for use in" a proceeding before a foreign or international tribunal; and (3) the applicant must be an "interested person." 28 U.S.C. § 1782(a); *see Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 256-59 (2004) (discussing the statutory prerequisites); *In re Google Inc.,* No. 14-MC-80333-DMR, 2014 WL 7146994, at *2 (N.D. Cal. Dec. 15, 2014). Because all three requirements are met here, this application should be granted.

Specifically, Specialized Helicopters is located in Watsonville, California and provided flight services to Ms. Santa Bernahl (previously – Ms. Zamuele) ("Ms. Bernahl"), Mr. Fils's former

wife, and, upon information and belief, to her then-lover, now husband, Mr. David Bernahl, in August 2017. (Declaration of Olegs Fils ("Fils Decl.") ¶ 10 & Ex. E.) By virtue of its location in Watsonville, California, Specialized Helicopters is located in this district. (*See* Decl. of Joseph R. Ashby ("Ashby Decl.) ¶ 2 & Ex. 1.). On information and belief, it possesses documents and information concerning the circumstances of infidelity committed by Ms. Bernahl.

The Hyatt Carmel Highlands in Carmel, California, where Ms. Bernahl incurred charges in September and December 2017, is a Hyatt-branded hotel, such that Hyatt Corporation is located in the district. (Ashby Decl. ¶ 3 & Ex. 2.) The Hyatt Carmel Highlands also believed to be known as Highlands Inn, Inc. does business in Carmel, California operates at the location, and so the entity that operates as Hyatt Carmel Highlands also believed to be known as Highlands Inn, Inc. is located in the district. (Ashby Decl. ¶ 4 & Ex. 2.) On information and belief, Ms. Bernahl and Mr. Bernahl stayed as guests at this exclusive, seaside resort in September and December 2017. (*See* Fils Decl. ¶ 10 & Ex. E.)

Burst + Bloom is a flower shop in Carmel-by-the-Sea, California (Ashby Decl. ¶ 5 & Ex. 3), where Ms. Bernahl made a purchase in August 2017 just days after the charges by Specialized Helicopters. (Fils Decl. 11 & Ex. E.) By virtue of the flower shop's location in Carmel-by-the-Sea, California, Burst + Bloom is located in this District. (Ashby Decl. ¶ 5 & Ex. 3). Upon information and belief, it possesses documents and information concerning the circumstances of infidelity committed by Ms. Bernahl.

SommPicks is an alcoholic beverage retailer licensed in the state of California offering members "difficult to source" selections of wine and beer. (Ashby Decl. ¶ 6 & Exs. 4, 5.) Ms. Bernahl made a purchase at SommPicks in November 2017. (Fils Decl. ¶ 12 Ex. E.) By virtue of its location in Daly City, California, SommPicks is located in this District. (Ashby Decl. ¶ 6 &

EX PARTE APPLICATION FOR SUBPOENAS

Ex. 6.) On information and belief, SommPicks possesses documents and information concerning the circumstances of infidelity committed by Ms. Bernahl.

Benchmark Wine Group is an online wine retailer (Ashby Decl. ¶ 7 & Ex. 7), from which Ms. Bernahl purchased in February 2018. (Fils Decl. ¶ 12 & Ex. E.) By virtue of its location in Napa, California, Benchmark Wine Group is located in this District. (Ashby Decl. ¶ 7 & Ex. 8.) On information and belief, Benchmark Wine Group possesses documents and information concerning the circumstances of infidelity committed by Ms. Bernahl.

Belmont Wine Exchange stores and sells fine wines. (Ashby Decl. ¶ 8 & Ex. 9.) Ms. Bernahl made two purchases from Belmont Wine Exchange in February 2018. (Fils Decl. ¶ 12 & Ex. E.). By virtue of its location in Hayward, California, Belmont Wine Exchange is located in this District. (Ashby Decl. ¶ 8 & Ex. 10.) Upon information and belief, Belmont Wine Exchange possesses documents and information concerning the circumstances of infidelity committed by Ms. Bernahl.

Mr. Fils is an "interested person" because he is a party to the Latvian Proceedings (the claimant), and his counsel in Latvia intends to use the documents obtained from the Merchants in the Latvian Proceedings. (Fils Dec. ¶¶ 2, 16; Declaration of Agris Bitans ("Bitans Decl.") ¶¶ 11–13.) Upon information and belief, the Merchants possess documents that will assist in demonstrating that Ms. Bernahl was unfaithful to Mr. Fils in at least August, September, November, and December 2017, and also in February 2018, while the parties were still married, thus justifying the cancellation of the various gift agreements that are at the heart of the Latvian Proceedings. (*See id.*)

In addition, the four discretionary factors analyzed by courts when considering § 1782 applications—the so-called "*Intel* factors"—all support an order authorizing the Subpoenas seeking discovery from the Merchants. *See Intel,* 542 U.S. at 264.

## STATEMENT OF FACTS

Mr. Fils and Ms. Bernahl married on October 1, 2016. (Fils Decl. ¶ 3.) In early 2018, Ms. Bernahl told Mr. Fils she wanted a divorce. (*Id.*) The couple divorced on March 29, 2018 upon Ms. Bernahl's initiative. (*Id.*) During their marriage, Mr. Fils gifted to Ms. Bernahl numerous valuable belongings and funds valued at several million *Euros*. (*Id.*) These gifts, which are the subject of various gift agreements, included, but were not limited to, the following: Harry Winston engagement ring (valued at 199 600,00 EUR); Tiffany & Co jewelry set consisting of earrings and a necklace (valued at 18 000,00 EUR); Harry Winston Chandelier Cluster earrings (valued at 88 400,00 EUR); Rolex watch (valued at 9 600,00 EUR); a Porsche Macan (valued at 67 760,00 EUR); a Porsche Turbo (valued at 133 100,00 EUR); IWC Da Vinci Automatic Moon Phase 36 alligator watch (valued at 15 400,00 EUR); and 3 600 000,00 EUR in cash. (*Id.*)

After the couple divorced in March 2018, Mr. Fils discovered that Ms. Bernahl had been in an extra-marital relationship with Mr. Bernahl. (Fils Decl. ¶ 4.) Mr. Fils discovered posts from private social media accounts in which Mr. and Ms. Bernahl are seen exchanging loving words with each other and are seen embracing and kissing while posing for pictures in New York and elsewhere, dating back to at least August 2017, during the time Mr. Fils and Ms. Bernahl were still married. (Fils Decl. ¶¶ 4, 5 & Exs. A, B, C.)

Upon belief, during her extra-marital affair with Mr. Bernahl, Mr. and Ms. Bernahl were passengers aboard a helicopter provided by Specialized Helicopters in August 2017 and were guests of the Hyatt Carmel Highlands in September and December 2017. In addition, Ms. Bernahl ordered fine alcoholic beverages from SommPicks, Benchmark Wine Group, and Belmont Wine Exchange, as well as flowers from Burst + Bloom, which are believed to have been delivered to Mr. Bernahl's residence in California as gifts.

EX PARTE APPLICATION FOR SUBPOENAS

1    Mr. and Mrs. Bernahl married in July 2018—just months after Mr. Fils and Ms. Bernahl's

2  divorce was finalized and Mr. Fils learned of the affair. (*Id.* ¶ 15.) The couple resides together in

3  California. (*Id.*)

4    In light of these circumstances, Mr. Fils has sought to recover the sentimental items and a

5  portion of the funds he gifted to Ms. Bernahl, valued at approximately €2.4 million that are the

6  subject of the various gift agreements, in the Latvian Proceedings. (Bitans Decl. ¶ 8; Fils Decl. ¶ 16.)

7

8  The legal basis of the claim in Latvia is gross ingratitude of Ms. Bernahl towards her then-spouse,

9  Mr. Fils, as well as her sole role in the breakdown of the couple's marriage.  (*See* Bitans Decl. ¶ 8;

10  Fils Decl. 16.)

11    Upon information and belief, around the time of the divorce, Ms. Bernahl covertly carried

12  out several transactions to dispose of or transfer *de facto* all her valuable assets, aiming to

13  circumvent any claims to those assets Mr. Fils might have post-divorce. (*See* Fils Decl. ¶ 16.) Some

14

15  funds were transferred to foreign accounts, but most of the assets were formally transferred to, or

16  encumbered on behalf of Ms. Bernahl's family members. (*Id.* ¶ 8) Mr. Fils has therefore also brought

17  claims to declare these transactions fraudulent and void within the Latvian Proceedings. (*Id.*)

18    It should be noted that the Latvian court has already found that Ms. Bernahl acted in bad

19  faith because she provided misleading information to the Latvian court and concealed her assets,

20  including some of the property and funds Mr. Fils gifted her. (Bitans Decl. ¶ 9.) The Latvian court

21  has therefore repeatedly sustained Mr. Fils' applications to secure his claim by seizing movable

22

23  property, real estate, and cash belonging to, as well as payments due to, the defendants in the Latvian

24  Proceedings.[2]  (*Id.*)

25

26  [2] Under Articles 137(1) and 140(1) of the Latvian Civil Procedure Law, the court may secure a claim provided, *inter alia*, there are reasonable grounds to believe that enforcement of the court

27  judgment otherwise may become problematic or impossible (in this case— mostly due to concealment of assets, towards which the claim could be enforced), and that *prima facie* the claim

28  has legal basis.  (Bitans Decl. ¶ 9.)

EX PARTE APPLICATION FOR SUBPOENAS

Evidence of Ms. Bernahl's infidelity is displayed throughout social media and dates back to August 2017.  For example, Mr. Bernahl posted a photo on his Instagram social media profile @dbernahl, where he is pictured embracing Ms. Bernahl at a Manhattan helipad with a Zip Aviation helicopter in the background. (*See* Fils Decl. ¶ 4 & Ex. A.) On information and belief, this photo was taken in August 2017, based in part on the construction progress of the New York skyscrapers in the background of the picture. (*Id.*) Therefore, upon information and belief, Mr. and Ms. Bernahl were romantically involved at least in August 2017, when they vacationed together in the U.S. and indulged in such luxuries as private helicopter rides.

During the final months of 2017, it is believed that Ms. Bernahl spent most, if not all, of that time in the company of her lover, Mr. Bernahl, in California, where he lived at the time and where the couple, now married, now lives. For example, on December 8, 2017, Mr. Bernahl posted a picture on his private Instagram social media profile @dbernahl, where Mr. and Ms. Bernahl can be seen embracing in a loving gesture.  (*See* Fils Decl. ¶ 5 & Ex. B.) Mr. Bernahl has captioned the picture with the text "Luckiest guy in the world... (continued)". (*Id.*) It is also noteworthy that Ms. Bernahl "liked" this picture through her account @santazamuele, thus expressing that she shares Mr. Bernahl's romantic sentiment towards her.  (Fils Decl. Ex. B.) On January 16, 2018, Mr. Bernahl posted another picture, where the couple can be seen in a similar pose, captioned "Moments #❤" (also "liked" by Ms. Bernahl).  (*See* Fils Decl. ¶ 5 & Ex. C.).

On January 26, 2018, Mr. Bernahl posted a picture with Ms. Bernahl's children, which is geotagged as having been taken in Big Sur, California. (*See* Fils Decl. ¶ 6 & Ex. D; Britan Decl. ¶ 4 & Ex. D.) This and other evidence (all of which Mr. Fils came to know only after his divorce with Ms. Bernahl) suggests Mr. and Ms. Bernahl spent time in California back in December 2017 as a couple.

Mr. Fils seeks discovery from the Merchants during this timeframe to aid in the Latvian Proceedings, because, upon information and belief, the Merchants possess documents and information concerning the infidelity committed by Ms. Bernahl and her then-lover, Mr. Bernahl, as well as gross ingratitude towards Mr. Fils. Ms. Bernahl's credit card statement reflects the following charges by the Merchants in August, September, November, and December 2017 and February 2018:[3]

| Date | Merchant | Amount |
|---|---|---|
| August 18, 2017 | Specialized Helicopters | 2 820,80 EUR |
| August 19, 2017 | Specialized Helicopters | 2 820,80 EUR |
| August 24, 2017 | Burst + Bloom | 594,96 EUR |
| September 20, 2017 | Hyatt Highland Inn Giftshop | 839,18 EUR |
| November 9, 2017 | SommPicks LLC | 5 631,83 EUR |
| December 25, 2017 | Hyatt Highland Inn Giftshop | 4 172,81 EUR |
| February 1, 2018 | Benchmark Wine Group, Inc. | 2 455,03 EUR |
| February 2, 2018 | Belmont Wine Exchange, LLC | 1 282,15 EUR |
| February 2, 2018 | Belmont Wine Exchange, LLC | 2 511,47 EUR |

(Fils Decl. Ex. E; Bitans Decl. Ex. E.)

Ms. Bernahl paid her credit card bill with funds gifted to her by Mr. Fils during their marriage. (Fils Decl. ¶ 13.)

During the time spent together, Ms. Bernahl also provided direct financial assistance to her lover, using funds accumulated in her bank account that were mostly comprised of the cash Mr. Fils had gifted to her. As evidenced by her bank account statements, on December 13, 2017 Ms. Bernahl

---

[3] Incidentally, Mr. Bernahl posted a photo on his Instagram social media profile @dbernahl, where he is pictured embracing Ms. Bernahl at a Manhattan helipad. (Fils Decl. ¶ 3 & Ex. A.). On information and belief, this photo was taken in August 2017, based in part on the construction progress of the New York skyscrapers in the background of the picture. (*Id.*) Therefore, on information and belief, the couple carried on this extra-marital affair since at least August 2017.

EX PARTE APPLICATION FOR SUBPOENAS

issued a "short term loan" of $8,000 to Mr. Bernahl. (Fils Decl. ¶ 14 & Ex. F.)

Through the Subpoenas, Mr. Fils seeks documents and information showing that Mr. and Ms. Bernahl stayed and the Hyatt Carmel Highlands and used Specialized Helicopters' services together while Ms. Bernahl was still married to Mr. Fils—namely that Ms. Bernahl spent money gifted to her by her spouse, Mr. Fils, to cover expenses while on vacation with her then-lover and currently husband.

All of these Merchants offer services in this District, where Mr. Bernahl resided at the time the charges were made, and where Mr. and Ms. Bernahl now reside together (on Eastfield Court in Carmel by the Sea). (*See* Fils Decl. ¶¶ 9, 15.) Numerous of Ms. Bernahl's credit card charges are by businesses in and near Carmel, California, which indicates that Ms. Bernahl may have stayed in Mr. Bernahl's home town for many weeks while still married to Mr. Fils (in August and November 2017, and February 2018). (Fils Decl. ¶¶ 10-12 & Ex. E.)

Considering the nature of Mr. and Ms. Bernahl's relationship, it is believed that Ms. Bernahl made the flower and wine purchases from the respective Merchants to be delivered to Mr. Bernahl's residence. (*See* Fils Decl. ¶ 20.). For example, the charge by Burst + Bloom was made after Ms. Bernahl had just arrived back in Riga, Latvia after ending her visit to Carmel-by-the-Sea. (Fils Decl. ¶ 11.)[4]

Through the Subpoenas, Mr. Fils seeks documents and information showing that Mr. and Ms. Bernahl used Specialized Helicopters' services together while Ms. Bernahl was still married to Mr. Fils—namely that Ms. Bernahl spent money gifted to her by her spouse, Mr. Fils, to cover expenses while on vacation with her then-lover. Mr. Fils also seeks documents and information

---

[4] Further, during time spent together in December 2017, Ms. Bernahl also provided direct financial assistance to her lover, using funds accumulated in her bank account that was mostly comprised of the cash Mr. Fils had gifted to her. As evidenced by her bank account statements, on December 13, 2017 Ms. Bernahl issued a "short term loan" of $8,000 to Mr. Bernahl. (Fils Decl. ¶ 14 & Ex. F.).

EX PARTE APPLICATION FOR SUBPOENAS

showing that Ms. Bernahl made an extravagant floral purchase to be sent to Mr. Bernahl's home, as well as multiple purchases of fine alcohol to be gifted to Mr. Bernahl, all while she was still married to Mr. Fils.

Counsel for Mr. Fils in Latvia intends to use the documents obtained from the Merchants in the Latvian Proceedings to demonstrate that Ms. Bernahl was unfaithful to Mr. Fils in at least August 2017, November 2017, and February 2018, thus demonstrating both gross ingratitude towards Mr. Fils and promoting the breakdown of their marriage, which justifies cancellation of the gift agreements. (*See* Bitans Decl. ¶¶ 10-19.)

## **ARGUMENT**

Section 1782(a) provides, in relevant part, that: [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal .... The order may be made ... upon the application of any interested person .... To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. 28 U.S.C. § 1782 (2013). The highly-relevant and narrowly-tailored discovery sought by Mr. Fils is precisely the sort of discovery contemplated by 28 U.S.C. § 1782. Section 1782 "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel,* 542 U.S. at 247. A court has wide discretion in granting a Section 1782 application. *See In re Gianasso*, No. 12-MC-80029, 2012 WL 651647, at *2 (N.D. Cal. Feb. 28, 2012). It does so with an eye toward the "twin aims of [Section] 1782: "providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 912

1   (N.D. Cal. 2019), appeal dismissed sub nom. *In re Palantir Techs., Inc.*, No. 20-15073, 2020 WL

2   3988000 (9th Cir. June 22, 2020).

3          With those aims in mind, the Court must first determine whether the applicant satisfies three

4   threshold requirements: (1) the person from whom discovery is sought must reside or be found in

5   the jurisdiction of the district court to which the application is made; (2) the discovery must be "for

6   use in" a proceeding before a foreign tribunal; and (3) the application must be made by an "interested

7

8   person" as related to the underlying foreign proceeding. *See* 28 U.S.C § 1782; *In re: Ex Parte*

9   *Application Varian Med. Sys. Intl. AG*, 16-MC-80048, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24,

10  2016).

11         Once the Court determines that the three threshold requirements are met, the Court may also

12
    consider four discretionary factors, known as the *Intel* factors, to determine the appropriateness of
13
    ordering discovery, namely, whether: (1) the documents and testimony sought are within the foreign
14
15  tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the foreign court or

16  government would be receptive to U.S. federal-court assistance, in consideration of the nature of

17  the foreign tribunal and the character of the proceedings underway abroad; (3) the Section 1782

18  request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a
19
    foreign country or the United States; and (4) the subpoena contains unduly intrusive or burdensome
20
21  requests. *See Intel*, 542 U.S. at 264-65.

22         As discussed in further detail below, Mr. Fils' application satisfies all three threshold

23  requirements, and each discretionary factor weighs in favor of issuing the Subpoenas to the

24  Merchants. The use of Section 1782 to obtain discovery from the Merchants will promote efficiency
25
    and transparency in the Latvian Proceedings, and may also encourage the Latvian court to provide
26
27  reciprocal assistance if the time should arise when a party seeks similar assistance from the Latvian

28

EX PARTE APPLICATION FOR SUBPOENAS

1   court. Accordingly, this Court should issue an order permitting the service of the Subpoenas

2   pursuant to 28 U.S.C. § 1782.

3   **I.      Mr. Fils's Application Easily Meets the Threshold Requirements of Section

4   1782.**

5       *First,* the Application meets the initial requirement of Section 1782 because each of the

6   Merchants "resides or is found in" the Northern District of California. 28 U.S.C. § 1782(a). *See In*

7   *re Illumina Cambridge Ltd.,* No. 19MC80215, 2019 WL 5811467, at *3 (N.D. Cal. Nov. 7, 2019)

8   (citing *In re Super Vitaminas, S.A.,* 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017).

9

10      Specifically, (1) Specialized Helicopters is physically present in the Northern District of

11  California, as it is located at 150 Aviation Way, Suite 101, Watsonville, CA; (2) Hyatt "resides or

12  is found in" the Northern District of California because regularly conducts business in this district

13  through the Hyatt-branded Hyatt Carmel Highlands that is physically present in the Northern District

14  of California located at 120 Highlands Drive, Carmel-by-the-Sea, California; (3) Hyatt Carmel

15  Highlands, also believed to be known as the Highlands Inn, Inc., "resides or is found in" the

16  Northern District of California because it is physically present in the Northern District of California

17  based on the hotel that is operated at 120 Highlands Drive, Carmel-by-the-Sea, California; (4) Burst

18  + Bloom "resides or is found in" the Northern District of California because it maintains offices and

19  regularly conducts business in this district: it is physically present in the Northern District of

20  California, as its address is The Crossroads Carmel, 238 Crossroads Blvd, Carmel-By-The-Sea,

21  California 93923; (5) SommPicks, LLC "resides or is found in" the Northern District of California

22  because it maintains offices and regularly conducts business in this district: it is physically present

23  in the Northern District of California, as its address is 440 Talbert Street, Daly City, California,

24  94014; (6) Benchmark Wine Group, Inc. "resides or is found in" the Northern District of California

25  because it maintains offices and regularly conducts business in this district: it is physically present

26

27

28

EX PARTE APPLICATION FOR SUBPOENAS

in the Northern District of California, as its address is 445 Devlin Road, Napa, California, 94558;

and (7) Belmont Wine Exchange, LLC, "resides or is found in" the Northern District of California

because it maintains offices and regularly conducts business in this district: it is physically present

in the Northern District of California, as its address is 25811 Clawiter Road, Hayward, California,

94545. (Ashby Decl. ¶¶ 2, 3, 4, 5, 6, 7, 8 & Exs. 1, 2, 3, 6, 8, 10.)

Thus, each of the Merchants "resides or is found in" the Court's jurisdiction. *In re Illumina Cambridge Ltd.*, No. 19-MC-80215, 2019 WL 5811467, at *3 ("[T]he test is . . . satisfied if the target of the 1782 application has a presence in this District. . . . Thus, there is no question that all Respondents are 'found' here.").

Section 1782 "supports a flexible reading of the phrase 'resides or is found,'" and one is "found" within a district if they are served "while physically present in the district of the court that issued the discovery order...for the purposes of § 1782(a)." *In re Edelman*, 295 F.3d 171, 178–180 (2d Cir. 2002). Further, it is well-settled as a matter of personal jurisdiction that a person is found wherever they are physically present. *Burnham v. Superior Court of California, Cty. of Marin*, 495 U.S. 604, 610 (1990). Ms. Bernahl's credit card statement reflects charges by the Merchants, which are listed on her credit card statement as "SPECIALIZED HELICOPTE," "HYATT HGHLND INN GIFTSHOP," "BURST & BLOOM," "SOMMPICKS," "BENCHMARK WINE GROUP," and "BELMONT WINE EXCHANGE," in August, September, November, and December 2017, and February 2018. (Fils Decl. ¶¶ 10–12, Ex. E.)

*Second,* the application satisfies the next prong of the Section 1782 analysis because the requested discovery is "for use in" the Latvian Proceedings, which constitute "foreign proceedings." *Intel Corp.*, 542 U.S. at 257-58 (noting that Section 1782 includes conventional civil proceedings in foreign tribunals); *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1111 (9th Cir. 2015) (noting that cases heard in "conventional courts," like the Latvian Proceeding, are within the

ambit of Section 1782's language of a "proceeding in a foreign or international tribunal"). Here, Mr. Fils intends to use the documents obtained from the Merchants to demonstrate that Ms. Berhahl, his wife at the time, carried on an extra-marital affair. (Bitans Decl. ¶¶ 10–19.) Such documents will help Mr. Fils demonstrate that Ms. Bernahl showed gross ingratitude towards Mr. Fils and was the sole promoter of breakdown of their marriage. Under Latvian law, Ms. Bernahl's (1) gross ingratitude and (2) her sole role in the breakdown of the marriage each constitute an independent legal basis for cancellation of the gift agreements between Mr. Fils and Ms. Bernahl. (Bitans Decl. ¶¶ 8-10.)

   *Third*, Mr. Fils satisfies the "interested person" requirement of Section 1782. As the *Intel* Court noted, "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." 542 U.S. at 256. Here, Mr. Fils is a party to the Latvian Proceedings (the claimant), and he has "a 'reasonable interest' in obtaining judicial assistance." *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d at 1110. (*See also* Fils Decl. ¶¶ 16-21.) Accordingly, Mr. Fils qualifies as an "interested person" within any fair construction of that phrase. *See id.*

## II.   The Discretionary *Intel* Factors Weigh in Favor of Permitting Mr. Fils' Application.

   Where, as here, the Application meets the statutory requirements of Section 1782, the Court has broad discretion to grant the Application. *See Akebia Therapeutics, Inc.*, 793 F.3d at 1112. The "twin aims" of Section 1782, "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts," suggests that a court should "allow[] . . . liberal discovery." *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002), aff'd, 542 U.S. 241 (2004). The four discretionary factors

EX PARTE APPLICATION FOR SUBPOENAS

1   applied by the courts, considered in light of these twin aims, weigh in favor of allowing the

2   Application.

3       *First* the documents sought are not within the foreign tribunal's jurisdictional reach and thus,

4   are not accessible absent Section 1782 aid. *Intel,* 542 U.S. at 264-65. It would be difficult, and

5

6   potentially impossible, for Mr. Fils to obtain the requested discovery absent this Court's assistance

7   and approval of the Application. Because none of the Merchants is a participant in the Latvian

8   Proceedings, the Latvian court lacks jurisdiction to compel any of the Merchants to produce the

9   information and documents outlined in the Subpoenas.  The Supreme Court noted in *Intel* that when

10  discovery is sought from a participant in the foreign proceeding (unlike any of the Merchants here),

11  the need for Section 1782 aid may not be as apparent as it ordinarily is when evidence is sought

12

13  from a nonparticipant in the foreign proceeding. *Intel,* 542 U.S. at 264. In contrast, nonparticipants

14  who are outside the foreign tribunal's jurisdictional reach – such as each of the Merchants – may

15  have relevant evidence not obtainable by the tribunal without the aid of Section 1782. *Id.*

16      Here, the interests of fairness and comity favor granting Mr. Fils' application because the

17  Latvian court has no authority to compel a third parties like any of the Merchants to produce the

18  requested materials, as nothing in the Latvian disclosure regime applies extra-territorially to any of

19  the Merchants, or could otherwise be used to obtain disclosure of these documents. The only other

20  potential option to obtain this evidence would be through the Hague Convention on the Taking of

21

22  Evidence Abroad in Civil or Commercial Matters; however, this route is complex, drawn out, and

23  may ultimately be unsuccessful. Thus, the first of the discretionary factors favors Mr. Fils.  *See In*

24  *re Letter Rogatory-Request for Int'l Judicial Assistance From the Harju Country Court in Estonia*

25  *Petition of Lyoness Eesi OÜ,* No. 17-MC-80044, 2017 WL 1436096, at *3 (N.D. Cal. Apr. 24, 2017)

26  ("[E]ntities or persons outside a foreign tribunal's jurisdiction may possess evidence that is

27  unobtainable absent Section 1782 aid.").

28

EX PARTE APPLICATION FOR SUBPOENAS

*Second,* there is no indication that the Latvian court would be unreceptive to judicial assistance from a federal court. *In re: Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at \*5 (N.D. Cal. Nov. 2, 2016) (granting the § 1782 petition and finding that the foreign court procedure at issue did "not probhibit use of evidence obtained in the course of discovery or disclosure by means of foreign court proceedings"). Indeed, courts are reluctant to deny a Section 1782 application absent "'authoritative proof' that a foreign tribunal would *reject* evidence obtained with the aid of §1782." *Id.* (*See also* Bitans Decl. ¶¶ 15-19 (affirming that the evidence obtained here would be presented in the Latvian Proceedings).)

Put another way, "[a]bsent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation and international aspects." *In re: Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at \*5. A district court should not attempt to evaluate the foreign tribunal's receptiveness. *See Intel Corp.*, 542 U.S. at 261 ("While comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases, they do not permit our insertion of a generally applicable foreign-discoverability rule into the text of § 1782(a)."). Here, because there is no indication that the Latvian court would be unreceptive to the Court's assistance, and because the opposite view—that declarant Agris Bitans affirms that the Latvian Courts would likely find the evidence useful—the second discretionary factor weighs in favor of Mr. Fils.

*Third,* the application is not an attempt to avoid foreign evidence-gathering restrictions, but instead is a good-faith request to obtain information that will be admissible in the Latvian Proceedings. This discretionary factor is not about whether the foreign court's discovery rules provide a means to access the requested information. *See Intel,* 542 U.S. at 247 (stating that "§ 1782 contains no threshold requirement that evidence sought from a district court would be discoverable

1   under the law governing the foreign proceeding"). Furthermore, the fact that discovery rules under

2   Latvian civil procedure are not identical to the Federal Rules of Civil Procedure does not signify an

3   attempt to circumvent foreign evidence-gathering restrictions. *See id.* at 261 (indicating that while

4   a "foreign nation may limit discovery within its domain" does not "necessarily signal objection to

5   aid from United States federal courts").

6

7       Here, Mr. Fils is in the unique position to make use of the evidence of the Merchants in the

8   Latvian Proceeding, as he is the claimant in that proceeding. He will have the "practical ability . .

9   . to place a beneficial document . . . before [the] foreign tribunal." *In re Pioneer Corp. for an Order*

10  *Permitting Issuance of Subpoenas to Take Discovery in a Foreign Proceeding*, No. MC 18-0037,

11  2018 WL 2146412, at *6 (C.D. Cal. May 9, 2018).

12

13      Mr. Fils' Application is made with the good faith belief that the discovery will lead to

14  evidence that is relevant to the annulment of the gift agreements, proving gross ingratitude of

15  Ms. Bernahl, as well as proving Ms. Bernahl's sole role in the breakdown of the couple's marriage

16  that is the subject of the pending Latvian Proceedings. There is nothing pursuant to Latvian law, or

17  to any rule of civil procedure, regulation or statute under Latvian law that prohibits gathering of

18  evidence via § 1782. Accordingly, the third discretionary factor also supports allowing Mr. Fils to

19  serve the Subpoenas upon the Merchants.

20

21      *Fourth,* the discovery Mr. Fils seeks is not "unduly intrusive or burdensome." *Intel,* 542 U.S.

22  at 265. Mr. Fils, through the application, seeks information for a narrowly tailored timeframe—

23  indeed, over the course of just one month each of August, September, and November 2017, and

24  February 2018, and, in the case of the Hyatt and the Hyatt Carmel Highlands/Highlands Inn, just 45

25  days from December 1, 2017 until January 15, 2018—that is relevant to the Latvian Proceedings.

26  The Subpoenas seek specific information and documents concerning the circumstances of the

27  reservation and stay of Ms. Bernahl at the Hyatt Carmel Highlands/Highlands Inn, the reservation,

28

- 17-

1  leasing, use, and passenger manifests for the helicopter or helicopters that Specialized Helicopters

2  provided and on which Ms. Bernahl and Mr. Bernahl were presumably passengers, and delivery

3  addresses, recipients, and information regarding Ms. Bernahl's order and purchase of extravagant

4  flowers and alcohol – all during the time period when Ms. Bernahl was married to Mr. Fils. These

5  requests are not overly intrusive, but rather, are narrowly tailored to identify documents that are

6  relevant to the Latvian Proceedings, while minimizing the burden on the Merchants.

7

8                                      **CONCLUSION**

9         For the forgoing reasons, Mr. Olegs Fils respectfully requests that this Court issue an order

10  permitting the service of the Subpoenas attached to the declaration of Joseph R. Ashby as Exhibits

11  11 to 17 pursuant to 28 U.S.C. § 1782.

12

13

14  DATED:   October 2, 2020

                                      SERGENIAN ASHBY LLP
15

16

17                                      By */s/ Joseph R. Ashby*
                                          Joseph R. Ashby
18
                                          Attorneys for Applicant Olegs Fils
19

20

21

22

23

24

25

26

27

28

- 18 -